**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Board of Trustees of the Southwest Carpenters Health and Welfare Trust,<br><br>Plaintiff,<br><br>v.<br><br>Veloria Jackson, et al.,<br><br>Defendants. | No. CV-22-01781-PHX-SMM<br><br>**ORDER** |

Pending before the Court is Defendants' Motion to Dismiss. (Doc. 46). The Motion is fully briefed (Docs. 47 and 48). For the following reasons, the Motion is denied.

**I.      Background and Procedural History**

Plaintiff Board of Trustees of the Southwest Carpenters Health and Welfare Trust is plan administrator and fiduciary of the Southwest Carpenters Health and Welfare Plan for Active Carpenters ("the Plan"). (Doc. 1 at 2).

Defendant Darwin Jackson participated in the Plan and enrolled his daughter, Cyndi Jackson, as a beneficiary of the Plan. (Doc. 1 at 3). The Plan, in a section titled "Reimbursement," provides that "[i]f you obtain a recovery and the Plan has not been repaid for the benefits the Plan paid on your behalf, the Plan shall have a right to be repaid from the recovery in the amount of the benefits paid on your behalf . . ." (Doc. 1-2 at 131). The section states, "[n]otwithstanding any allocation or designation of your recovery (e.g. pain and suffering) made in a settlement agreement or court order, the Plan shall have a right of full recovery, in first priority, against any recovery." (Doc. 1 at 5; Doc.1-2 at 131).

Further, "[i]f the covered person is a minor, any amount recovered by the minor, the minor's trustee, guardian, parent, or other representative, shall be subject to this provision. Likewise, if the covered person's relatives, heirs, and/or assignees make any recovery because of injuries sustained by the covered person, that recovery shall be subject to this provision." (Doc. 1 at 5; Doc. 1-2 at 132).

On February 5, 2020, Cyndi Jackson was admitted to Chinle Hospital where she was diagnosed with symptomatic diverticulum and a possible sealed perforation. (Doc. 1 at 3). The following day, she was flown to Phoenix Children's Hospital, where she died on February 9, 2020. (Id.) The Plan paid $105,569.44 worth of benefits on behalf of Cyndi Jackson for medical treatment associated with her treatment at Phoenix Children's Hospital. (Id. at 5).

On July 16, 2020, Darwin and his wife, co-Defendant Veloria Jackson, filed a medical malpractice lawsuit against the Phoenix Children's Hospital in Arizona state court. (Doc. 1-1 at 1). That lawsuit sought "general damages for Veloria and Darwin for the loss of their daughter, . . . purusant [sic] to A.R.S. § 12-613 and Arizona law;" "economic damages incurred by Cyndi's Estate including medical bills…;" and "all other damages allowable under Arizona law;" as well as other damages. (Doc. 1 at 4; Doc. 1-1 at 7-8). On April 4, 2022, Darwin and Veloria Jackson settled the claims alleged in that lawsuit for a confidential amount. (Doc. 1 at 4). Alongside the settlement, the Jacksons—on behalf of themselves, the Estate of Cyndi Jackson, and the Statutory Beneficiaries of the wrongful death claim—signed a "Memorandum of Settlement Agreement" ("MSA") which states that the settlement resolved "all claims asserted or which could be asserted" in the malpractice lawsuit. (Id.; Doc. 37-2). Veloria signed the MSA on behalf of herself and the statutory beneficiaries and Darwin signed the MSA "on behalf of himself & the Estate." (Doc. 37-2 at 2). The MSA does not divide the settlement amount into specific amounts for the settling of individual claims, but instead presents the settlement as a single amount for all claims asserted or which could have been asserted.

$105,569.44 of the settlement is being held in the trust account of the law firm that

represented the Jacksons in their malpractice suit, Kelly & Lyons, PLLC. (Doc. 1-1 at 5). The remainder of the settlement has been disbursed to the Jacksons and/or to Kelly & Lyons, PLLC. (Id.)

On June 16, 2022, Plaintiff filed a Complaint in the United States District Court for the Central District of California. (Doc. 1). The Complaint sought an equitable lien on $105,569.44 of the settlement proceeds held by Kelly & Lyons, PLLC and/or the Jacksons—the amount that the Plan paid out for Cyndi's medical expenses. (Id. at 6).

On September 9, 2022, Defendants filed a Motion to Dismiss. (Doc. 32). In that Motion, Defendants asked the court to dismiss Plaintiff's complaint for (1) lack of personal jurisdiction, (2) *forum non conveniens*, (3) failure to state a claim upon which relief may be granted, or (4) failure to join an indispensable party. (Doc. 32 at 1). Defendants' arguments under the first two theories centered around the contention that the case should not be adjudicated in California. (Id. at 5). Defendants argued that the case should be tried, if at all, in Arizona. (Id. at 10).

On October 5, 2022, Judge Stanley Blumenfeld, Jr.—the judge presiding over the case in the Central District of California—issued an order transferring the case to the District of Arizona. (Doc. 41). That order did not rule on Defendants' arguments for dismissal under Rule 12(b)(6) and (7), which remained pending. (Id.) The parties' briefs from the Motion to Dismiss filed in the Central District of California focused on whether the case should be tried in California or Arizona. As a result, upon receiving this case, this Court denied without prejudice the initial Motion to Dismiss and welcomed Defendants to file a new Motion to Dismiss that more fully addressed their arguments under Rule 12(b)(6) and (7). Defendants did so and that Motion is fully briefed. (Docs. 46-48).

**II.   Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiency of a complaint. Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation omitted). Rule 12(b)(6) must be read in conjunction with Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2);

see also Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). A complaint need not provide detailed factual allegations but must provide more than "labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). It must contain factual allegations sufficient to raise a right to relief above the speculative level and to "state a claim that is plausible on its face." Id. at 555, 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). A court may dismiss a claim either because it lacks "a cognizable legal theory" or because it fails to allege sufficient facts to support a cognizable legal claim. See SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996).

When a court is deciding a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Smith v. Jackson, 84 F.3d 1213, 1217 (9th Cir. 1996) (citing Everest & Jennings v. Am. Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir. 1994)). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998).

Ordinarily, a court may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. See United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003). However, courts may consider matters of judicial notice. (Id. at 908). "A court may take judicial notice of matters of public record," Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018). As such, judgments and other court documents are proper subjects of judicial notice. See, e.g., United States v. Black, 482 F.3d 1035, 1041 (9th Cir. 2007). A Court is permitted to take judicial notice *sua sponte*. See, e.g., Callan v. N.Y. Cmty. Bank, 643 Fed. Appx. 666, 666 (9th Cir. 2016).

Further, the "incorporation by reference" doctrine allows a court deciding a Rule 12(b)(6) motion to consider documents incorporated by reference, but not physically

attached to the complaint if such documents are central to the plaintiff's claim and their authenticity is undisputed. Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006) (citation omitted). Doing so does not convert the motion to dismiss into a motion for summary judgment. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

**III.  Discussion**

As an initial matter, the Court takes judicial notice of the underlying medical malpractice complaint, which is a matter of public record. See Black, 482 F.3d at 1041. The Court incorporates by reference the Plan as it is referenced in the Complaint, (Doc. 1 at 5), is central to Plaintiff's claim, and its authenticity is not disputed. See Marder, 450 F.3d at 448. Similarly, the Court incorporates by reference the Memorandum of Settlement Agreement, (Doc. 37-2), because it is referenced in the Complaint, (Doc. 1 at 4), is central to Plaintiff's claim, and its authenticity is not disputed. By contrast, the Court will not consider the email correspondence between parties' counsel that Defendants have attached to their Motion to Dismiss, (Docs. 46-1. 46-2), because such correspondence was not referenced in the Complaint and is not central to Plaintiff's claim.

While Defendants move to dismiss this case based on both Rule 12(b)(6) and 12(b)(7), Defendant's arguments under the former—specifically, their arguments pertaining to Cyndi's estate—also cover their arguments under the latter. Thus, while the Court begins by addressing some of Defendants' arguments under Rule 12(b)(6), it will not include a separate analysis under 12(b)(7).

Defendants move to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6), arguing that Arizona's Wrongful Death Act precludes Plaintiff from seeking recovery from the Settlement funds. (Doc. 46 at 3). In response, Plaintiff argues, *inter alia*, that is entitled to recover because the Wrongful Death Act is preempted by ERISA and because the settlement settled not only a claim under the Wrongful Death Act, but also a survival action for medical expenses under A.R.S. § 14-3110. (Doc. 47 at 4-7).

Defendants' underlying malpractice suit included claims under two Arizona statutes: the wrongful death statute—A.R.S. § 12-611 *et seq.*, and the survival statute,

A.R.S. 14-3110—as well as "all other damages allowable under Arizona law." (Doc. 1-1 at 4). It sought damages incurred by Veloria and Darwin and economic damages incurred by Cyndi's Estate, including medical bills. (Id. at 7-8).

Central to the parties' arguments here is the distinction in Arizona law between the two aforementioned state statutes. Although a wrongful death action and a survival action stem from the same wrongful act, they are distinct claims with important differences. Barragan v. Superior Ct., 470 P.2d 722, 725 (Ariz. Ct. App. 1970) (citation omitted). A wrongful death action is an "original and distinct claim for damages sustained by the statutory beneficiaries and is not derivative of or a continuation of a claim" that the decedent could themselves have brought. Id. at 724. A survival action, on the other hand, allows the personal representative of a decedent's estate to bring or enforce a claim that the decedent could have themselves brought if not for their death. Id. A survival action plaintiff may not recover for pain and suffering, A.R.S. § 14-3110, but may recover medical expenses. Gartin v. St. Joseph's Hosp. & Med. Ctr., 749 P.2d 941, 943 (Ariz. App. 1988) (citing Barragan, 470 P.2d at 725). A wrongful death claim begins where a survival action ends, and a plaintiff may recover under both theories—not as a double recovery but as "separate recoveries for different wrongs." Barragan, 470 P.2d at 725.

To begin, Plaintiff is entitled to recover under the plain language of the Plan. Under the Plan's "Subrogation and Reimbursement" section, the Jacksons agreed that "[i]f you obtain a recovery and the Plan has not been repaid for the benefits the Plan paid on your behalf, the Plan shall have a right to be repaid from the recovery in the amount of the benefits paid on your behalf . . ." (Doc. 1-2 at 131). The Plan gives Plaintiff has "a right of full recovery, in first priority, against any recovery," "[n]otwithstanding any allocation or designation of your recovery (e.g., pain and suffering) made in a settlement agreement or court order." (Id.) That section goes on to state that "if the covered person is a minor, any amount recovered by the minor [or] the minor's . . . parent . . . shall be subject to this provision. Likewise, if the covered person's relatives, heirs, and/or assignees make any recovery because of injuries sustained by the covered person, that recovery shall be subject

to this provision." (Doc. 1 at 5; Doc. 1-2 at 132).

The Jacksons argue that they did not recover "because of injuries sustained by" Cyndi; that their damages were for their own injuries. (Doc. 48 at 4-5.) Although some of their legal injuries were their own—for pain and suffering under their Wrongful Death Act claim—others were Cyndi's, brought under a survivorship action. Further, whether or not the Jacksons' pain and suffering were in fact factually and/or proximately caused by Cyndi's injuries is a question of fact that the Court will not decide at the motion to dismiss stage. See Firetrace USA, LLC v. Jesclard, 800 F.Supp.2d 1042, 1055 (D. Ariz. 2010) (quoting Kavanaugh v. Kavanaugh, 641 P.2d 258, 266 (Ariz. App. 1981)). In addition, the Jacksons explicitly brought and settled claims for medical expenses—expenses which were paid by the Plan. Thus, the Jacksons' recovery for medical expenses falls squarely within remit of the plan's "Subrogation and Reimbursement" section.

Under ERISA, a plan fiduciary may bring a claim under § 502(a)(3) to "obtain appropriate equitable relief . . . to enforce . . . the terms of the plan." 29 U.S.C. § 1132(a)(3)(B). This includes the right to reimbursement of "specifically identifiable funds . . . within the possession and control of the [beneficiaries]." Sereboff v. Mid Atl. Med. Servs., Inc. 547 U.S. 356, 362-63 (2006). A plan fiduciary may seek an equitable lien to collect for medicals bills, when the plan's reimbursement section "specifically identifie[s] a particular fund, distinct from the [beneficiaries'] general assets" and a "particular share of that fund to which [the plan fiduciary] [is] entitled." Id. at 364.

Here, Plaintiff is the plan fiduciary and has identified a "particular fund"—Defendant's recovery—distinct from Defendants' general assets. So too has Plaintiff identified a "particular share of that fund" to which it is entitled—$105,569.44, which is the amount that Plaintiff paid on behalf of Cyndi for medical treatment associated with the alleged medical negligence of Phoenix Children's Hospital. (Doc. 1 at 5).

Thus, under ERISA and the terms of the Plan, Plaintiff's pleadings suggest a plausible claim for an equitable lien to enforce its right to reimbursement of the $105,569.44

ERISA Preemption

Under the terms of the Plan, Plaintiff's pleadings suggest it is entitled to recovery. However, the Jacksons argue that the state statutes under which they brought their claims prevent such a recovery. The Court must therefore examine the relationship between the Plan, ERISA, and these state statutes.

The Jacksons' arguments under 12(b)(6) focus on Arizona's Wrongful Death Act. (Doc. 46 at 3-4). Because that statute only permits recovery for economic injuries suffered by the Jacksons upon Cyndi's death and because any money recovered under the statute is not subject to Cyndi's debts or liabilities, the Jacksons argue that any money they received in compensation for their Wrongful Death Act claim is not subject to subrogation or reimbursement. (Id.)

In response, Plaintiff points out that, to the extent that these arguments are correct, this would put the wrongful death statute—and the cases that interpret it—in direct conflict with the Plan itself, which—by its plain language—allows Plaintiff to receive reimbursement for paying Cyndi's medical expenses. (Doc. 47 at 7). Plaintiff argues that because of this conflict, ERISA preempts the state statute and case law interpreting it. (Id.)

Section 514(a) of ERISA preempts "any and all State laws insofar as they relate to" an ERISA plan. 29 U.S.C. § 1144(a). This preemption clause is "deliberately expansive." Pilot Life Ins. V. Dedeaux, 481 US. 41, 45-46 (1987). Indeed, ERISA's preemption clause is "one of the broadest preemption clauses ever enacted by Congress." Greany v. W. Farm Bureau Life Ins., 973 F.2d 812, 817 (9th Cir. 1992) (quotation omitted). Under the clause, a state law "relate[s] to" an ERISA plan if it "has a connection with or reference to such a plan." Egelhoff v. Egelhoff ex rel. Breiner, 523 U.S. 141, 147 (2001) (citing Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 (1983)).

"[T]o determine whether a state law has the forbidden connection, we look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." Id. (internal quotations omitted) (citing Cal. Div. of Lab. Standards Enf't v.

Dillingham Constr., N.A., Inc., 591 U.S. 316, 325 (1997)). In the Ninth Circuit, courts employ a "relationship test" to determine whether a state law has a "connection with" and ERISA plan. Providence Health Plan v. McDowell, 385 F.3d 1168, 1172 (9th Cir. 2004). Under this test, "a state law claim is preempted when the claim bears on an ERISA-regulated relationship, e.g., the relationship between plan and plan member . . . ." Bafford v. Northrop Grumman Corp., 994 F.3d 1020, 1031 (9th Cir. 2021) (internal quotations omitted) (citing Paulsen v. CNF, Inc., 559 F.3d 1061, 1082 (9th Cir. 2009)).

The Ninth Circuit has not directly addressed the issue of whether an ERISA plan preempts a state wrongful death statute—or, for that matter, a survival statute. However, this Court had the opportunity to address the issue in Am. Express Co. v. Ponnambalam, No. CV-18-03237-PHX-SMM, 2019 WL 13195129 (D. Ariz. June 3, 2019). Both parties cite to that case to support their positions. (Doc. 47 at 7-8; Doc. 48 at 2-3).

In Ponnambalam, an ERISA health plan granted the plan the right to subrogation and reimbursement where a third party was legally responsible for the payment of medical expenses related to a covered person's illness or injury. 2019 WL 13195129 at *1. These subrogation and reimbursement rights expressly applied to a covered person's estate, personal representative, and heirs in the event of the covered person's wrongful death or survival claim. Id. The defendant's daughter was covered under the plan and died following injuries caused by a third-party tortfeasor. Id. at *2. Following her death, the father brought and settled a wrongful death claim against the third-party tortfeasor. Id. The plan then filed suit, seeking to impose an equitable lien on the proceeds of the settlement. Id. The plan asserted that the settlement included a broad release for claims for the recovery of medical expenses that could have been brought by the daughter's estate in a survivorship action. Id. The father filed a motion to dismiss, arguing that a wrongful death recovery is not subject to the debts or liabilities of a decedent. Id. at *3.

In assessing the parties' arguments, the Court found that "the critical inquiry is whether the [p]lan, which is in direct conflict with the Arizona Wrongful Death Act, preempts the Arizona Wrongful Death Act pursuant to ERISA." Id. Adopting the reasoning

of the Fourth Circuit, this Court held that:

> "the question of preemption turns on whose damage claim is at issue. If the damage claim belongs to [a] [d]ecedent's beneficiaries, then the Arizona Wrongful Death Act is too remote to relate to the Plan. However, if the damage claim belongs to [the] [d]ecedent or [d]ecedent's estate, then the wrongful death statute relates to the Plan such that it is preempted by ERISA."

Id. at *5 (citations omitted).

It is important to note that where, in Ponnambalam, the Court was analyzing only Arizona's Wrongful Death Act and not the State's survival statute, the Fourth Circuit—in the cases relied upon by the Court in Ponnambalam—was essentially analyzing both a wrongful death claim *and* a survival claim, because North Carolina's wrongful death statute permitted a personal representative to seek in a wrongful death action all of the damages it could have sought in a separate survival action. Liberty Corp. v. NCNB Nat. Bank of S.C., 984 F.2d 1383, n. 5 (4th Cir. 1993); McInnis v. Provident Life & Acc. Ins. Co., 21 F.3d 586, 589-90 (4th Cir. 1994).

Ultimately, however, the Court in Ponnambalam did not reach a conclusion on the preemption issue, finding that the Wrongful Death Act "*may* relate to the Plan at issue such that it *may* be preempted by ERISA." Id. at *6 (emphasis added). The Court explained that it would need to review the wrongful death settlement contract and release to determine whose damage claims were settled. Id. Ultimately, it never reached that inquiry, as the case was concluded on other grounds.

Here, however—unlike in Ponnambalam—the Court has the MSA before it, which explains whose claims were settled. (Doc. 37-2). Per the MSA, Defendants settled "all claims asserted or which could be asserted" in the underlying medical malpractice complaint. (Id. at 1). The MSA thus incorporates the claims made in the underlying medical malpractice complaint, which belonged to Veloria and Darwin and to Cyndi's Estate, in addition to other, unspecified claims which could have been asserted. (Doc. 11 at 7-8). As such, the settlement settled both a Wrongful Death Act damage claim belonging to the

- 10 -

decedent's beneficiaries and—unlike in Ponnambalam—a survival statute damage claim belonging to the decedent's estate. As a result—per the Fourth Circuit's reasoning adopted by this Court in Ponnambalam—the Wrongful Death Act may not relate to the Plan such that it is preempted by ERISA, because that damage claim belongs to the Cyndi's beneficiaries—the Jacksons. Regardless, Arizona's survival statute does relate to the Plan such that it is preempted by ERISA, because the relevant damage claim belonged to the Estate. Plaintiffs are seeking recovery of the medical expenses they paid out, which the Jacksons secured in settlement of their claim under the survival statute—the only of the two statutes in question that allows for recovery of medical expenses. See Gartin, 749 P.2d at 943 (quoting Barragan, 470 P.2d at 725). Therefore, the survival statute, A.R.S. § 14-3110, is preempted and does not prevent Plaintiff from seeking to recover under its claims here.

### Lack of Estate

Throughout their Motion to Dismiss, the Jacksons repeatedly highlight the fact that an estate for Cyndi has not been opened as a reason why this Court must dismiss Plaintiff's claim. (E.g., Doc. 48 at 3). This argument, predicated upon Arizona's survival statute, is central to certain of their arguments under both Rule 12(b)(6) and (7). Plaintiff counters that the lack of estate "has no bearing on the Plan's lien on the proceeds of the malpractice settlement." (Doc. 47 at 6). Indeed, the Court has already found that Arizona's survival statute—which forms the basis of the Jacksons' arguments concerning the lack of estate—is preempted here by ERISA. The Court will nonetheless address the parties' arguments as to Cyndi's estate, or lack thereof. Neither party has cited to a case with the precise factual scenario presented here: involving a claim brought and settled by the purported representative of an estate, an estate which the representative never opened. The Court has been unable to locate any such case. Nevertheless, the Court finds that Plaintiff has the better of this issue.

The Jacksons contend that the settlement—contrary to the plain language of the MSA—did not settle the claims of Cyndi's estate because they never opened the estate.

(Doc. 46 at 5-6). In fact, the Jacksons go further and argue that no estate claim ever existed. (Doc. 46 at 5). In effect, they are arguing that they brought and settled an invalid survival action against the hospital.

However, the Jacksons brought and settled a survival action, in which Darwin Jackson held himself out as personal representative of Cyndi's estate, yet to be opened. Indeed, Defendants signed the Memorandum of Settlement Agreement on behalf of the Estate of Cyndi Jackson. (Doc. 37-2 at 2). But now, in order to avoid Plaintiff's subrogation claim, the Jacksons argue that their settled claim for Cyndi's medical expenses was invalid because they decided not to establish an estate for Cyndi, meaning Darwin was never truly a personal representative of Cyndi's estate.

Yet the MSA settled all claims that were asserted—including a survival action filed on behalf of Cyndi's estate, yet to be opened—or "which could be asserted." The Jacksons' assertion that no estate claim ever existed is simply false. At best, the Jacksons' estate claim was not technically, at the time of settlement, a valid one. But neither the Plan nor the MSA make the distinction that Defendants now appear to offer between valid and invalid claims. Neither do the Jacksons offer any caselaw supporting this distinction. Further, the Jacksons could have validated their supposedly invalid claim by opening the Estate of Cyndi, which the Court imagines they would have done had their medical malpractice lawsuit not settled.[1] In arguing that they had no power to bind Cyndi's estate to the MSA, the Jacksons offer an analogy to a scenario in which they attempted to bind the NBA's Phoenix Suns to the MSA. (Doc. 48 at 3). However, unlike the Phoenix Suns, (a) Darwin held himself out as the personal representative of Cyndi's estate and signed the MSA as such, (b) Darwin could have opened the estate any time he wanted, and (c) the Jacksons are proper personal representatives of Cyndi's estate, pursuant to A.R.S. § 14-3203(A)(5). And, of course, the Phoenix Suns did not agree to reimburse the Plan for medical expenses that the Plan paid

---

[1] In their Reply, the Jacksons argue that Plaintiff could have opened Cyndi's estate itself and sought to recoup its expenses earlier but missed its chance owing to a statute of limitations. (Doc. 48 at 5). However, this argument relies on a series of emails between the parties' counsel, which—as the Court has previously explained—is not properly before the Court at this time.

- 12 -

1 on Cyndi's behalf.

The Jacksons point to multiple Arizona cases that deal with an estate's involvement in litigation, although none feature the factual scenario presented here. E.g., Ader v. Estate of Felger, 375 P.3d 97, 104-05 (Ariz. Ct. App. 2016); Barragan, 470 P.2d at 724. In Ader, for example, the Court held that "when an estate is involved in litigation, the personal representative is the proper named defendant." However, the Ader court was simply noting that an estate itself cannot bring or defend a suit. Id. at 104. As that court explained, an estate can only bring or defend a suit through a personal representative, and it is the latter who is the "proper named defendant" or plaintiff. Id. at 104. Here, in the underlying medical malpractice complaint, the survival claim was not brought by the estate itself, but by "Darwin Jackson on behalf of the Estate of Cyndi Rae Jackson . . . ." (Doc. 1-1 at 1). Darwin was thus acting as the estate's personal representative—even if at that point the estate had not yet been formally opened—and therefore the claim was brought in accordance with the rule stated in Ader. For the same reason, Cyndi's estate is not an indispensable party, without which the case must be dismissed under Rule 12(b)(7), as the Jacksons argue. (Doc. 46 at 4).

**IV.     Conclusion**

The Jacksons agreed to reimburse Plaintiff for the medical expenses it paid from any recovery received by the relatives of a covered person, because of injuries sustained by that covered person. (Doc. 1-2 at 130-32). Cyndi was a covered person under the Plan and the Jacksons—her parents—recovered based on injuries she sustained, including for medical expenses that Plaintiff paid for. Under the plain language of the Plan, therefore, Plaintiff is entitled to seek reimbursement from the Jacksons for these medical expenses. To the extent that Arizona's survival statute contradicts the Plan's language, it is preempted by ERISA. Plaintiff's claims may proceed.

Accordingly,

///

.///

**IT IS HEREBY ORDERED denying** Defendants' Motion to Dismiss. (Doc. 46). The Court will issue a separate order setting a Rule 16 Preliminary Pretrial Conference.

Dated this 12th day of July, 2023.

_____
Honorable Stephen M. McNamee
Senior United States District Judge